**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

ANTONIO ROMERO-OCHOA,
   *Defendant-Appellant.*

No. 08-30251

D.C. No.
3:07-cr-00325-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
January 22, 2009—Seattle, Washington

Filed February 5, 2009

Before: Robert R. Beezer, Richard C. Tallman and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

Stephen R. Sady, Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Karin J. Immergut and Claire M. Fay, United States Attorney, Portland, Oregon, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellant Antonio Romero-Ochoa was indicted by a grand jury for knowingly and unlawfully re-entering the United States after having been previously arrested and deported subsequent to being convicted of an aggravated felony. In a pretrial motion, Romero-Ochoa sought dismissal of the indictment, claiming that the crime of which he was previously convicted was not an aggravated felony, and that, as a result, his indictment incorrectly allowed for a sentencing enhancement on the basis of his prior conviction. He asserted he was entitled under due process to know whether he faced the consequences of conviction following re-entry after an aggravated felony conviction because the sentence would be longer. He claims he cannot make an intelligent decision whether to enter a guilty plea or proceed to trial without a pretrial ruling on this issue.

When the district court denied his motion, Romero-Ochoa next requested that the district court revise the indictment by striking reference to the aggravated nature of the felony. The district court denied that relief as well, indicating that the court would resolve the issue at sentencing. Romero-Ochoa then filed this interlocutory appeal, arguing that the district court's failure to provide a pretrial judicial ruling on the disputed term "aggravated felony" in his indictment constitutes a violation of his Sixth Amendment due process right to notice. We conclude that we do not have jurisdiction to hear this appeal, and we dismiss it accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2007, a grand jury indicted Romero-Ochoa for knowingly and unlawfully re-entering the United States

without express consent, after having previously been arrested and deported from the United States subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Romero-Ochoa had two antecedent convictions in state court for Possession of a Schedule II Controlled Substance, Methamphetamine, which is a Class C felony pursuant to Oregon law. OR. REV. STAT. § 475.840(3)(b). Romero-Ochoa pleaded not-guilty to the federal government's unlawful re-entry charge on February 11, 2008.

On May 23, 2008, Romero-Ochoa moved to dismiss his indictment on the basis that it improperly alleged that he was previously convicted of an aggravated felony, as defined under 8 U.S.C. § 1101(a)(43)(B). Specifically, he argued that his prior possession conviction did not constitute an aggravated felony. The government filed a reply, and the district court heard argument on the motion on June 17, 2008. The district court rejected Romero-Ochoa's claims that dismissal or judicial rewriting of the indictment was warranted due to incorrect notice of a sentencing enhancement within the indictment. It then concluded that the issue of whether Romero-Ochoa's previous conviction constitutes an aggravated felony should not be resolved until sentencing, if there ultimately is a conviction in this case. Romero-Ochoa nonetheless filed this interlocutory appeal.

## STANDARD OF REVIEW

We determine de novo whether this court may properly exercise jurisdiction over an interlocutory appeal. *Special Invs., Inc. v. Aero Air Inc.,* 360 F.3d 989, 992 (9th Cir. 2004).

## DISCUSSION

[1] Our jurisdiction is typically limited to final decisions of the district court. 28 U.S.C. § 1291; *Abney v. United States*, 431 U.S. 651, 656 (1977). Romero-Ochoa concedes that the district court has not made a final decision regarding the mer-

its of his claim. He argues, however, that we should exercise jurisdiction over his interlocutory appeal, either because his appeal meets the requirements of the collateral order doctrine, or because he is entitled to a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. As explained below, neither of these arguments has merit.

## A.  Collateral Order Doctrine

**[2]** Romero-Ochoa first argues that the district court's denial of his motion gives us jurisdiction to decide his interlocutory appeal under the collateral order doctrine, first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The Supreme Court held that as a "practical construction" of § 1291's final decision requirement, appellate courts should exercise jurisdiction over a small class of decisions "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen,* 337 U.S. at 546; *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). In order to qualify as a member of this small class, an order must " '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.' " *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). This three-pronged test is frequently referred to as the *Cohen* test. *See, e.g.*, *Digital Equip.*, 511 U.S. at 869; *Englert v. MacDonell*, Nos. 06-35465, 06-35531, 2009 WL 32559 (9th Cir. Jan. 7, 2009).

The Supreme Court has instructed that the *Cohen* test should be strictly applied so as to prevent the collateral order doctrine from "swallow[ing] the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error

at any stage of the litigation may be ventilated." *Digital Equip.*, 511 U.S. at 868 (internal citation omitted). We have held that the decision to hear an order on appeal "should not be made lightly[,] because the principle that appellate review should be deferred pending the final judgment of the district court is central to our system of jurisprudence." *United States v. Amlani*, 169 F.3d 1189, 1192 (9th Cir. 1999).

In applying the *Cohen* test, we also bear in mind " 'the compelling interest in prompt trials' " and the inherent delay of final resolution caused by interlocutory appeals. *United States v. Austin*, 416 F.3d 1016, 1020 (9th Cir. 2005) (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). This interest is particularly significant in criminal cases, where " 'delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes.' " *Austin*, 416 F.3d at 1020 (quoting *United States v. MacDonald*, 435 U.S. 850, 862 (1978)).

"Because collateral jurisdiction requires all three elements [to satisfy the *Cohen* test], we lack collateral order jurisdiction if even one is not met." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007). In this case, none of the three *Cohen* prongs has been satisfied. Accordingly, we do not have jurisdiction to hear the merits of Romero-Ochoa's claim that the district court's failure to make a pretrial ruling as to the applicability of a sentencing enhancement violated his Sixth Amendment rights.

**[3]** Under the first prong of the *Cohen* test, the relevant district court order must "conclusively determine the disputed question." *Will*, 546 U.S. at 349. Romero-Ochoa seeks to characterize the disputed question in this case as whether a district court judge is required to rule on a sentencing enhancement before trial. He asserts that the district court, by denying his motion to correct the indictment, answered the

relevant question. However, the "disputed question" we must decide is the one Romero-Ochoa actually raised before the district court, not the question he has conjured up for purposes of this appeal. He asked the district court to strike the word "aggravated" so he could not be punished more severely and the jury could not make a determination on the question if he was convicted of the illegal re-entry following an unspecific generic felony.

[4] After the district court refused to dismiss the indictment, Romero-Ochoa requested in oral argument that the court strike by interlineation that portion of the indictment alleging that he had been convicted of an aggravated felony. The district court declined to conclusively determine whether the indictment correctly included reference to an aggravated felony, and instead reserved its ruling for post-trial sentencing after any conviction. Because the district court did not "conclusively determine the disputed question" in a pretrial order, the first *Cohen* prong is not satisfied, and we lack jurisdiction under the collateral order doctrine.

[5] The second *Cohen* prong is also not satisfied. It requires that the relevant district court order "resolve an important issue completely separate from the merits of the action." *Will*, 546 U.S. at 349. But, as the Supreme Court held in *Abney*, an issue at the core of what must be resolved during trial is, by its nature, not "collateral." 431 U.S. at 663.[1] In this case, whether Romero-Ochoa's prior conviction constitutes an aggravated felony sufficient to warrant a sentencing enhancement is a mixed question of law and fact closely linked to the

---

[1] In Romero-Ochoa's briefs and during oral argument, he has been careful to narrowly define the issue he presents for review as "the district court's failure to rule on a motion to correct a defect in the indictment." This premise is necessary, because this court's jurisdiction over an interlocutory appeal on the issue of the defect itself is precluded by *Abney*. 431 U.S. at 663 (ruling that a "challenge to the sufficiency of the indictment does not come within the *Cohen* exception" because it fails both the second and third prongs of the *Cohen* test).

merits of the underlying action, in which the prior convictions themselves must be proven beyond a reasonable doubt as an element of the offense. This court cannot determine if Romero-Ochoa's right to an accurate indictment has been violated until the underlying conviction is established on a sufficient record. *Cf. Flanagan,* 465 U.S. at 268-69 (holding that an order disqualifying counsel is not truly collateral because it requires prejudice to the defense for its violation, which can only be determined after trial); *MacDonald*, 435 U.S. at 860 (noting that a claimed violation of the Speedy Trial Clause is not sufficiently independent under the collateral order doctrine, because the claim would be satisfied by an acquittal). The issue is not one separate from the merits; it is one to be resolved as part of the merits during the course of the trial and sentencing. If Romero-Ochoa is acquitted at trial, the issue of the aggravated felony sentencing enhancement will become moot. *But cf. Abney*, 431 U.S. at 659-60 (observing that the very nature of a double jeopardy claim is collateral to the underlying issue in the sense that the claim does not affect and is not affected by the decision of the merits). Accordingly, the second prong of the *Cohen* test is not met.

Finally, the third prong of the *Cohen* test requires that the relevant order "be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349. In this case, the district court has yet to rule on the issue. Even assuming, arguendo, that Romero-Ochoa is ultimately convicted, the jury's verdict on a full trial record, or the record supporting a guilty plea, followed by the district court's ruling on the issue at sentencing, would be fully reviewable on appeal. If Romero-Ochoa was denied sufficient notice under the Sixth Amendment as a result of a flaw in the indictment, he would be free to raise that issue on appeal. *See Gautt v. Lewis*, 489 F.3d 993, 1005-09 (9th Cir. 2007) (finding that the government violated defendant's Sixth Amendment right to notice by including one sentencing enhancement in the indictment, then pursuing a different enhancement at jury instruction).

Romero-Ochoa argues that the district court's failure to resolve the sentence enhancement issue before trial denies him notice in a way that is irreparable on appeal because he must make decisions regarding plea agreements and trial strategy without a judicial ruling on his potential maximum sentence. He further argues that the district court's pretrial order "involve[s] an important right which would be lost, probably irreparably, if review had to await final judgment." *Abney*, 431 U.S. at 658 (internal quotation marks omitted). Although we, like the district court, are sensitive to Romero-Ochoa's concerns and the difficulty inherent in making pretrial decisions, the fact that Romero-Ochoa is left with a degree of risk as to his final sentence — a risk inherent in virtually every criminal prosecution at this stage of the case — does not give him the right, under the collateral order doctrine, to interlocutorily appeal the district court's refusal to rule.

As the Supreme Court held in *Digital Equipment*,

> the strong bias of [28 U.S.C.] § 1291 against piecemeal appeals almost never operates without some cost. A fully litigated case can no more be untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called "effectively unreviewable" in the sense that relief from error can never extend to rewriting history. Thus, erroneous evidentiary rulings, grants or denials of attorney disqualification, and restrictions on the rights of intervening parties may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment.

511 U.S. at 872 (internal citations omitted). "[T]he mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement." *Id.*

[6] Romero-Ochoa's interest in a pretrial judicial determination of the legal question challenging whether his prior con-

victions were "aggravated felonies" is insufficient to satisfy the third *Cohen* prong. If Romero-Ochoa is convicted and sentenced under the indictment, he will be free to appeal the district court's ruling on that issue. While it will then be too late for Romero-Ochoa to revive plea negotiations with the prosecution, his assertions regarding the applicability of the sentencing enhancement can be easily reviewed on appeal and the district court's decision reversed, if appropriate.

**[7]** No *Cohen* prong is satisfied here. Therefore, we lack jurisdiction to hear this appeal under the collateral order doctrine.

## B.   Writ of Mandamus

**[8]** As an alternative to our exercising jurisdiction under the collateral order doctrine, Romero-Ochoa urges us to issue a writ of mandamus directing the district court to resolve the dispute over the sentencing enhancement in a pretrial order. We have the jurisdictional power to "issue all writs necessary or appropriate in aid of [our] jurisdictio[n] [which are] agreeable to the usages and principles of law." 28 U.S.C. § 1651. Traditionally, exercise of this power has only been deemed appropriate when used " 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Will v. United States*, 389 U.S. 90, 95 (1967) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). The Supreme Court has concluded that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Id.* (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945)); *accord Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004).

In reviewing a mandamus petition, we review the district court's orders for clear error. *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 998 (9th Cir. 2003). The petitioner must

show his right to the writ is "clear and indisputable." *Valenzuela-Gonzalez v. U.S. Dist. Ct.*, 915 F.2d 1276, 1279 (9th Cir. 1990) (quoting *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976)). We are guided by five principles in determining whether to grant a mandamus petition. These principles are:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977) (citations omitted). These principles are meant to inform a court's decision whether to grant a mandamus petition, but "are not meant to supplant reasoned and independent analysis by appellate courts." *United States v. Harper*, 729 F.2d 1216, 1222 (9th Cir. 1984) (internal quotation omitted).

**[9]** Romero-Ochoa has not met his burden to justify our invocation of this "extraordinary remedy." As discussed *supra*, Romero-Ochoa's claim does not satisfy the first, second, and fifth prong of the referenced five principles. Moreover, he has not established that the district court's failure to rule on the subject issue before trial is "clearly erroneous as a matter of law," nor does the district court's decision to delay ruling "manifest[ ] a persistent disregard of the federal rules." *Bauman*, 557 F.2d at 654-55. On the contrary, the district court's decision not to rule on issues of sentencing until the sentencing hearing is both logical and consistent with customary federal practice.

**[10]** The facts and circumstances of this case weigh heavily against granting a writ, which is typically reserved for

extraordinary occasions of judicial "usurpation of power." *Will*, 389 U.S. at 95. The district court gave a thoughtful, reasoned analysis in its ruling denying Romero-Ochoa's motion to dismiss the indictment and the corresponding pretrial request to alter the indictment. The district judge made it clear that he had considered arguments presented by both sides, and concluded, consistent with typical federal practice, that a judicial determination regarding sentencing enhancement was best resolved at sentencing, should there be one. To issue the writ in these circumstances would flout Supreme Court rulings limiting use of the writ to cases of judicial abrogation of duty. *Id.* We see none here.

## CONCLUSION

We lack jurisdiction to decide Romero-Ochoa's appeal and the circumstances are not sufficiently exceptional to warrant a writ of mandamus.

**DISMISSED.**