# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

HENRY SAMUELI,
        *Defendant-Appellant.*

No. 08-50417

D.C. No.
8:08-cr-00156-
CJC-1

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
September 2, 2009—Pasadena, California

Filed September 24, 2009

Before: Ferdinand F. Fernandez and Ronald M. Gould,
Circuit Judges, and Morrison C. England, Jr.,*
District Judge.

Opinion by Judge Gould

*The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

13785

---

**COUNSEL**

Gordon A. Greenberg, McDermott Will & Emery, LLP, Los Angeles, California, for the defendant-appellant.

George S. Cardona (argued) and Robb Adkins, Assistant United States Attorneys, and Thomas P. O'Brien, United States Attorney, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

GOULD, Circuit Judge:

Defendant-Appellant Dr. Henry Samueli appeals two orders entered by the district court in a criminal proceeding alleging that he made a false statement to the Securities and Exchange Commission (SEC) in violation of 18 U.S.C. § 1001. We lack jurisdiction to review either order, and we dismiss the appeal.[1]

**I**

This criminal case follows allegations that securities fraud occurred at Broadcom, a company that Samueli co-founded. During an SEC investigation into Broadcom's stock-option

---

[1]Our determination that we lack jurisdiction means that we do not pass on the merits of the appeal. We do not, therefore, review the disposition or reasoning contained in the orders below. Samueli may or may not have viable issues to present on appeal of his sentence once a final order has been entered, and we express no views on the merits of any such sentencing appeal.

grants, Samueli told investigators that he had no involvement in the granting process. Samueli now admits that he was involved in the granting process and that he knew that statement was false at the time he made it.

After negotiations with the government, Samueli entered into a combination charge-and-sentence bargain under Federal Rule of Criminal Procedure 11(c). Under the agreement, Samueli would plead guilty to one count of making a false statement in violation of 18 U.S.C. § 1001, but would not face criminal exposure on securities-fraud charges. The statutory maximum for an 18 U.S.C. § 1001 violation is five years imprisonment and a $250,000 fine. The parties' sentence bargain stipulated five years probation, a $250,000 fine, and a $12 million payment to the U.S. Treasury "for making a false statement to the SEC."

Samueli entered his guilty plea on June 23, 2008. Under Rule 11(c)(3)(A), the district court elected to wait until the presentence report (PSR) was complete before deciding whether to accept the plea agreement. Both parties objected to portions of the PSR after the probation officer disclosed it. Before filing his set of objections with the court, Samueli filed an application for an order sealing the objections and an *in camera* hearing to discuss them. The district court denied this relief on August 26, 2008.

On September 8, 2008, after reviewing the terms of the plea agreement and the PSR, the district court rejected the agreement. *United States v. Samueli*, 575 F. Supp. 2d 1154, 1166 (C.D. Cal. 2008). Samueli thereafter declined to withdraw his guilty plea and now awaits sentencing. In the interim, he brings this appeal.

## II

Samueli first requests review of the August 26, 2008, order denying his requests to file his PSR objections under seal and

to hear his objections *in camera*. Samueli filed his notice of appeal on September 22, 2008, almost one month after the August 26, 2008, order was issued. Because a criminal defendant has only ten days to file a notice of appeal from a district court order, Samueli's appeal is untimely. Fed. R. App. P. 4(b)(1)(A)(i). Dismissal of the appeal of this order is mandatory. *United States v. Sadler*, 480 F.3d 932, 942 (9th Cir. 2007).

## III

**[1]** The second order at issue, which Samueli did timely appeal, is the September 8, 2008, order rejecting the plea agreement. Here, Samueli's appeal is met by the broad rule that orders in criminal cases are generally unreviewable before imposition of a judgment and sentence. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). Samueli nonetheless asserts that his case comes within an exceptional category of cases in which an appeal at this stage might proceed. We address in turn his contentions, reject them as being without merit, and dismiss his appeal. Because of the importance of this case for the general subject of attempts to gain interlocutory appeal of a district court's rejection of a plea agreement reached under Rule 11(c) of the Federal Rules of Criminal Procedure, and because one of our sister circuits has spoken on this subject although the Ninth Circuit has not done so, we elaborate on the governing principles.

## A

**[2]** First, Samueli contends that we have jurisdiction under 28 U.S.C. § 1291, which confers appellate jurisdiction over final decisions of the district courts. Although conceding that the plea-rejection is not a final order terminating the litigation, Samueli argues that it falls within what may be generally described as the "collateral-order doctrine." This rule was first announced prominently in *Cohen v. Beneficial Indus. Loan*

*Corp.*, 337 U.S. 541 (1949). Under this doctrine, an interlocutory order is "final," and thus immediately appealable, if it determines "claims of right separable from, and collateral to, rights asserted in the action . . . " *Id.* at 546. Collateral-order jurisdiction attaches to the "small class" of orders determining rights that are "too important . . . and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.*

**[3]** In criminal cases, we apply the collateral-order doctrine with "the utmost strictness." *Flanagan v. United States*, 465 U.S. 259, 265 (1984). Otherwise this limited exception would threaten to undermine the general rule requiring a final order to support an appeal. Interlocutory appeals are typically unsuitable for criminal cases. In this sphere interlocutory appeals can be "fatal to the vindication of the criminal law" because ensuing delays will threaten to prejudice the government's ability to prove its case and increase litigation and detention costs. *Cobbledick v. United States*, 309 U.S. 323, 325 (1940); *see also United States v. Austin*, 416 F.3d 1016, 1020 (9th Cir. 2005) (citing *United States v. MacDonald*, 435 U.S. 850, 862 (1978)). For such reasons, an interlocutory order is appealable only where it affects a "right not to be tried." *Austin*, 416 F.3d at 1022 (citing *Flanagan*, 465 U.S. at 267).

**[4]** With these general principles in mind, we apply the collateral-order doctrine to this case. Our circuit precedent makes it clear that the plea-rejection order, as with other interlocutory orders, will be immediately-appealable only if it: (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits; and (3) is effectively unreviewable on appeal from a final judgment. *United States v. Romero-Ochoa*, 554 F.3d 833, 836 (9th Cir. 2009) (citing *Will v. Hallock*, 546 U.S. 345, 349 (2006)). We lack jurisdiction unless all three elements are met. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007). The newsworthy nature of a case and potential public

interest in it do not alter these basic rules and, if they are not satisfied, we have no discretion to alter our law.

**[5]** Addressing the first prong, if the "disputed question" concerns the sentence that will be given, that has not yet been determined. But if the "disputed question" concerns whether the plea agreement will be accepted, the first prong is satisfied because this plea agreement has been rejected. On this analysis, it is not at all clear that Samueli can show a conclusive determination on the disputed question of his sentence. But even if we may reasonably assume that the first prong in substance has been satisfied on the theory that the question in dispute concerns acceptance of the Rule 11(c) plea agreement, nonetheless the appeal of the order fails because the second and third prongs of the test for a collateral order are not satisfied.

**[6]** As to the second prong of the collateral-order test, a plea-rejection order is not completely separate from the merits. The district court concluded that the rejected sentence bargain was not in the interest of justice, a determination inescapably intertwined with the issue of what is the appropriate and just sentence due Samueli in the light of his role in the allegedly-fraudulent stock-option grants and his culpability on the charge to which he pleaded guilty. *Cf. Abney v. United States*, 431 U.S. 651, 659-60 (1977) (holding interlocutory review is appropriate where an order related to claim "completely independent of [the defendant's] guilt or innocence"). We agree with the Tenth Circuit, which has held that the decision to reject a plea is "directly dependent on the court's assessment of the defendant's degree of culpability" and cannot be separated from the principal issue as required by the collateral-order doctrine. *United States v. Carrigan*, 778 F.2d 1454, 1465 (10th Cir. 1985).[2]

---

[2]The *Carrigan* court reviewed a plea rejection under a previous version of Rule 11. Despite having been renumbered, the substantive provisions of the rule remain the same. *See* Fed. R. Crim. P. 11(e), Federal Criminal Code and Rules, at 37-38 (West 1985).

**[7]** Applying the third-prong of the collateral order rule, we determine the plea-rejection order is effectively reviewable on appeal from a final judgment. After Samueli's sentencing, either party may argue that the district court abused its discretion in rejecting the combined plea and sentence agreement. *See In re Morgan*, 506 F.3d 705, 708 (9th Cir. 2007). Because Samueli decided to maintain his guilty plea after the sentence agreed upon by Samueli and the government was rejected, the only action remaining for finality is the sentencing of Samueli. Once the district court enters the judgment and commitment order, it will be clear whether Samueli's sentence is greater than, less than, or equal to the stipulated term. We will also have the benefit of the district court's analysis at the sentencing hearing. At that time, the district court's rejection of the Rule 11(c) plea and sentence agreement can be reviewed. If there is then perceived merit to any claim by Samueli relating to his sentence imposed by final order, Samueli's rights can be vindicated on an appeal.

**[8]** Despite what we see as a clear application of settled principles that take this case outside the legitimate bounds of the collateral-order doctrine, Samueli argues that he will suffer irreparable harms if required to wait until after sentencing to appeal. Among these, he complains about the stigma of continued association with the securities-fraud allegations, the loss of an immediate evidentiary hearing on his objections to the PSR, and the pressure that he feels to testify in his former colleagues' upcoming trials.[3] These harms, however, do not implicate rights "synonymous with a right not to be tried,"

---

[3]Samueli incorrectly characterizes the plea-rejection order as a requirement that he cooperate with prosecutors in the trials of his former colleagues. He argues that the order is immediately-reviewable because of its effect on his Fifth Amendment privilege, citing *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc), for the proposition that orders implicating privileges are reviewable on interlocutory appeal. *Bittaker*, however, is inapposite because the order there directly determined the applicability and scope of the attorney-client privilege in a civil habeas proceeding. *Id.* at 717. Unlike in *Bittaker*, the order here does not make any rulings with respect to Samueli's Fifth Amendment privilege, but rather considers the absence of a cooperation agreement as one of several factors weighing against the acceptability of the plea. It does not conclusively determine the existence or scope of Samueli's privilege, as the order in *Bittaker* did. *Id.*

*Austin*, 416 F.3d at 1024 (internal citations omitted), and we decline to extend the scope of the collateral-order doctrine to encompass them. Because the finality rule is important to a well-functioning appellate system, we will not lightly expand the collateral-order doctrine. We hold that an order rejecting a plea agreement under Rule 11(c) is not separate from the merits and can be effectively reviewed on appeal, and we therefore lack jurisdiction to review it as a collateral order.

**B**

**[9]** Samueli's second jurisdictional argument is that the plea-rejection order is immediately-appealable under 28 U.S.C. § 1292(a)(1), which confers interlocutory jurisdiction over orders refusing injunctions, as well as orders that have the "practical effect" of doing so. *Carson v. American Brands, Inc.*, 450 U.S. 79, 83-84 (1981). An order has the practical effect of an injunction if it is directed to a party, enforceable by contempt, and designed to accord some or all of the relief sought by a complaint. *Orange County v. Hongkong and Shanghai Banking Corp. Ltd.*, 52 F.3d 821, 825 (9th Cir. 1995) (citing 16 Charles A. Wright et al., Federal Practice and Procedure § 3922 at 29 (1977) (additional citations omitted)).

**[10]** A plea-rejection order does not refuse an injunction, because a plea agreement, if accepted, would not compel or prohibit action by either party. *See Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181, 1186-87 (9th Cir. 2004). The district court's order explains its reasons for rejecting the plea agreement, but does not place the parties under court order of any kind and is therefore not directed at a party. Moreover, the plea-rejection order is not enforceable by contempt. We lack jurisdiction under 28 U.S.C. § 1292(a)(1).

**C**

**[11]** Finally, Samueli argues that our decision in *In re Morgan*, 506 F.3d 705 (9th Cir. 2007), provides an independent

and sufficient jurisdictional basis for his appeal. *Morgan*, however, did not purport to create an independent jurisdictional ground. Jurisdiction was proper in that case because the appellant petitioned for a writ of mandamus under 28 U.S.C. § 1651(a), a remedy not sought by Samueli here. *See Morgan*, 506 F.3d at 707. Absent a prerequisite showing that we have jurisdiction, we have no power to review these interlocutory orders, and accordingly we do not do so.

For the reasons stated above, the appeal is **DISMISSED.**